JOHN W. KELLEY, In Equity,

*vs.*

YORK CLIFFS IMPROVEMENT COMPANY.

York.    Opinion November 23, 1900.

*Equity.    Specific Performance.    Stock.*

1.  It is never obligatory upon the court to decree the specific performance of a contract.    The court will always exercise an unfettered discretion to refuse such a decree until it is satisfied that the contract is fair and equitable and was entered into advisedly, understandingly and without mistake.

2.  In this case, if the contract is susceptible of the construction placed upon it by the plaintiff, it is manifestly unequal; and, further, was evidently made under a mistake on the part of the defendant as to a material fact.

IN EQUITY.    ON APPEAL.

Bill in equity, heard by the court below, upon bill, answer and replication, where a decree was entered dismissing it with costs.

The facts appear in the opinion.

*G. F. Haley and Leroy Haley; John W. Kelley*, for plaintiff.

Counsel argued:

First.    That by-law 15 and the resolution of the directors passed Nov. 2, 1892, were valid and binding upon the company.

Second.    That the transaction would not impair the assets of the company nor injure the rights of the other stockholders or creditors.

Third.    That the by-law and resolution added to the stock a power it would not have had but for them, and the company cannot repudiate this; that no one but creditors or other stockholders, by becoming parties to this bill can do so, and then only by showing that their interest will suffer.

Fourth.    That the tender was sufficient.

Fifth.    That by no other means than by the granting of the relief prayed for can the plaintiff obtain his rights.

Counsel cited:    (1.) Cook, Stock & Stockholders, §§ 311, 312;
*Dock* v. *Cordage Co.*, 167 Pa. St. 370, (citing *City Bank of Columbus* v. *Bruce*, 17 N. Y. 507; *Coleman* v. *Oil Co.*, 51 Pa. St. 74;
*Clapp* v. *Paterson*, 104 Ill. 26); *Vent* v. *Duluth Coffee, etc. Co.*,
67 N. W. Rep. 70, (citing *Browne* v. *Plow Works*, 64 N. W. Rep.
66); *Currier* v. *Lebanon Slate Co.*, 56 N. H. 262; *Republic L.
Ins. Co.* v. *Swigert*, 25 N. W. Rep. 680; *Piscataqua F. & M.
Ins. Co.* v. *Hill*, 60 Maine, 178; *Thompson* v. *Moxey*, (N. J.) 20
Atl. Rep. 854; *Franco Texan Land Co.* v. *Bouseelet*, 7 S. W.
Rep. 761; Thompson, Corp. § 1557; *Dupee* v. *Boston Water Power
Co.*, 114 Mass. 37.

(3) Creditors alone can impeach a sale of stock to the
company.

Under the theory of the following cases, the preservation of the
rights of the creditors being the only reason for a limitation upon
the power of corporations to purchase their own stock, it has been
held that creditors alone may impeach such a transaction.    And
since, where a receiver is appointed to take charge of the property
and assets of the corporation, he is, for the purpose of determining
the nature and extent of his title, regarded as representing only
the corporate body itself, and not its creditors and shareholders,
and is vested by law with the estate of the corporation, and for
purposes of litigation takes only the rights of the corporation such
as could be asserted in his own name,—a resolution of the company, duly passed, canceling all certificates for stock not fully
paid, and issuing new paid up certificates for the amount of the
surrendered stock actually paid, was held to be, in effect a purchase by the company of the unpaid stock at its par value, and
binding between the corporation and the stockholders, so that it
could not be avoided by a receiver of the company.    Thompson on
Corporations, § 2063;    *Republic Life Ins. Co.* v. *Swigert*, 135 Ill.
150.

The company cannot object.    It is estopped.

This provision of the contract constituted a material, substantial
part of the consideration and inducement for the purchase of the
stock.    *Vent* v. *Duluth Coffee, etc. Co.*, 67 N. W. Rep. 70.    In

that case the court held that the agreement added to the stock the power for a stockholder to return his stock and recover the price paid for it in money. In the case at bar we ask its cost in land according to agreement. In *New England Trust Co.* v. *Abbott*, 162 Mass. 148, the court held an agreement that the corporation should have the right to buy the stock valid and shows the reason for allowing corporations to buy their own stock, and that the stockholder was bound by the agreements. See *Franco Texan Land Co.* v. *Bouseelet*, supra.

If the minds of the parties did not meet upon the payment of stock, but did meet upon the payment of cash, yet the plaintiff when he obtained the stock had a right to offer it in lieu of cash, because the stock had attached to it the right and power to pay for land, and the mind of the defendant and the mind of the original purchasers of the stock met upon the proposition that it would be received as cash for the purchase of land, and after that without the consent of the stockholder and action by the defendant that power could not be taken from it.

A purchase by the corporation does not amount to a reduction of the capital stock. *Western Improvement Company* v. *Bank*, 72 N. W. Rep. 657; note to § 283 Cook on Stock and Stockholders; also *N. E. Trust Co.* v. *Abbott*, 162 Mass. 148; *Dupee* v. *Boston Water Power Co.*, supra; *Leland* v. *Hayden*, 102 Mass. 542.

*Geo. C. Yeaton*, for defendant.

SITTING: WISWELL, C. J., EMERY, STROUT, SAVAGE, FOGLER, POWERS, JJ.

EMERY, J. This is a bill in equity in which the court is asked to decree the specific performance of an alleged contract for the conveyance of two parcels of land at York Cliffs. As to such applications generally, it seems advisable to iterate and affirm what was said by this court in *Mansfield* v. *Sherman*, 81 Maine, 365, viz: "Such an application is addressed to the sound discretion of the court. Not every party who would be entitled as of right to damages for the breach of a contract is entitled to a decree for its

specific performance. Before granting such a decree, the court should be satisfied not only of the existence of a valid contract, free from fraud, and enforceable in law, but also of its fairness and its harmony with equity and good conscience. However strong, clear and emphatic the language of the contract, however plain the right at law; if a specific performance would, for any reason, cause a result, harsh, inequitable or contrary to good conscience, the court should refuse such a decree and leave the parties to their remedies at law. In an equity proceeding, the complainant must do equity and can obtain only equity."

From the evidence in this case we find the following facts. The York Cliffs Improvement Company was organized in 1892 to purchase, improve, lease and sell lands at York Cliffs, a summer resort. It purchased some 400 acres of land, laid it out into lots, built a hotel and made other improvements. It incurred some debts, but did not sell much land and was not a financial success. In August, 1898, the plaintiff, in behalf of a client who did not wish his name to be known, approached the president and some of the directors of the company with a view to purchase the two parcels in question. After some negotiation the bond of the company in the sum of $15,000, was given to the plaintiff for the conveyance of the land to him on or before September 10, 1898, upon condition of "the said Kelley paying to the said company on delivery of said deed of fifty-three thousand seven hundred and fifty dollars less the sum of fifteen thousand dollars and interest thereon, etc." The deduction was the amount of two existing mortgages on the land which Kelley was to assume and pay.

Instead of tendering the above named sum in money when calling for the deed of conveyance, the plaintiff Kelley, or his client, procured certificates of shares of the company's stock to the amount of 381 shares of the par value of $100 each, which however were not standing in the name of either on the books of the company. These certificates, indorsed or assigned in blank, the plaintiff tendered to the company (with an accompanying bill of sale of them) as good for $38,100, of the agreed purchase money. The balance ($600) he tendered in money. This tender of part money and part stock was refused.

The plaintiff claimed a right to tender stock instead of money under a by-law of the company adopted at the time of its organization of the following tenor, viz:

"Any stockholder shall have the right at any time to convert any or all of his holdings in the capital stock of the company into holdings in real estate upon such terms as may from time to time be prescribed by the directors;" which by-law was supplemented by a resolution of the board of directors passed November 2, 1892, "that hereafter the stock of this company shall be accepted at not less than its par value in payment for land."

It does not appear that the plaintiff or his client owned any of the stock of the company at the time of making the contract and execution of the bond for the conveyance. Indeed, a reasonable inference from the evidence is that he did not. A question is, therefore, raised whether the by-law and resolution include purchasers who were not stockholders at the time of the contract for purchase. We do not find it necessary to decide that question now, as this suit is more properly determinable upon other controlling facts.

About the time of the adoption of the resolution, a schedule price list of the company's lots of land was made and approved. No lots appear to have been sold for or paid for in stock, and for many months before this contract no sales at all appear to have been made. The business of the company had been for some time at a stand still. The president and the director, who made this contract for the company, both testify that the by-law and resolution had never been acted upon, and had escaped their memory,— that these were not in their minds, and that no allusion was made to either of them or to stock payments during the negotiations,— that they made a price less than forty per cent of the schedule price and understood they were selling at that reduced price for cash. They were aged men, upwards of eighty, and we see no reason to doubt the truth of their testimony.

There is also evidence that the land was saleable at that time at a price in money in the neighborhood of $50,000 while the stock, par value of $100, was not saleable for over a few dollars per

share.   Indeed, some of the stock pledged as collateral had been sold after advertising for $1 per share, the pledgor not choosing to buy it in though apprised of the time and place of sale.

The most that can be extracted for the plaintiff out of the evidence is, that the officers of the company, supposing they were making an advantageous sale for money, by mistake made a disastrous sale for stock of doubtful value.   Whether the sale was for money or for the stock was of great moment to both parties.   Waiving the questions (1) whether the company had the power to sell its assets for its stock, and (2) whether the by-law, resolution and bond will bear the construction contended for by the plaintiff,—it must be evident that a contract so construed would be largely one-sided. The plaintiff would obtain land of considerable money value for stock of little money value, while the defendant would suffer loss and be seriously crippled in its resources.   These considerations, the mistake and the inequality, are enough to show that the court should not enforce specific performance, but should leave the plaintiff to such damages as he can recover at law, if any.   *Mansfield* v. *Sherman*, 81 Maine, 365.

*Decree below affirmed with costs on the appeal.*