## 2709. DALTON GROCERY COMPANY v. BLANTON.

In this State a corporation can not buy its own stock from its stockholders to such an extent as will diminish the outstanding capital stock below the minimum stated in the charter; but where the corporation is solvent

and no rights of creditors are interfered with, an ordinary corporation which has issued stock in excess of the minimum stated in the charter may bona fide buy back from one or more of its stockholders all or any portion of the excess of stock so issued.

DECIDED FEBRUARY 15, 1911.

Complaint; from city court of Valdosta—Judge Cranford. May 6, 1910.

*Woodward & Smith, O. M. Smith,* for plaintiff.

*G. A. Whitaker,* for defendant. ·

POWELL, J. Blanton was a stockholder in the Dalton Grocery Company and owned five shares of its stock, of the par value of $100 each. He wished to dispose of the stock, and the president of the grocery company told him that he might trade it out,—that is, that he might turn in the stock to the corporation and buy $500 worth of goods. Blanton had a running account with the corporation at the time, he being a retail merchant and the grocery company being wholesale merchants. He turned over the stock and not only bought the $500 worth of goods, but made additional purchases. He paid his account from time to time and took receipts in full; the $500, however, being considered as having been paid on the general account. Some two years later the Dalton Grocery Company fell into financial straits. It does not appear that any receiver was appointed, but by some consent of those interested the business was placed in the hands of a trustee. This suit was brought in the name of the corporation itself against Blanton for the $500 which had not been paid otherwise than by the surrender of his stock in the corporation. At the trial the jury rendered a verdict for the defendant, thus settling all issues of fact in his favor; so that it may be stated as part of the facts of the case, upon which the propositions of law we are now deciding depend, that at the time this transfer of stock was made from Blanton to the corporation, the corporation was solvent. The grocery company, as plaintiff in error in this court, makes the point that this transaction in which the stock was transferred was between Blanton and the president of the corporation, who was also general manager, and that the president and general manager had no authority to bind the corporation in any such transaction; but we may eliminate this question by saying that the evidence was such as to justify the jury to infer that even if the president of the corporation had no such

authority, his conduct in making the transaction was ratified on behalf of the corporation.

The remaining question is, did the corporation have the authority to buy back its own stock from Blanton? In the case of *Fitzpatrick* v. *McGregor*, 133 *Ga.* 332 (65 S. E. 859, 25 L. R. A. (N. S.) 50), there is a very complete discussion of the general tenor of the American authorities on the question as to when and under what conditions a corporation may buy back its own stock. Many questions, however, are left open in that case, as the only point before the court was whether an insolvent bank could buy shares of its stock from its own stockholders; and it was pointed out that there is a criminal statute in this State which forbids any such transaction.

The effect of a corporation's buying its own stock from one of its stockholders is to retire, temporarily at least, that much of its capital stock, and therefore to diminish pro tanto the amount of its capital stock. It is our opinion that a corporation, whether solvent or insolvent, can not buy back its own stock from one or more of its stockholders in such amount as to reduce the outstanding capital stock of the corporation to an amount below the minimum capital stock stated in the charter. The law of this State undoubtedly contemplates that before corporate organization is completed, the minimum capital stock authorized in the charter shall have been subscribed for. It is true that if 10 per cent. of the capital stock is paid in, the corporation may begin business, but in that event the other 90 per cent. must be represented by the liability of the stockholders upon their unpaid stock subscriptions; it being contemplated in all cases that the corporation should have as an asset the minimum capital stock, either in what has been actually paid in or in what it can force its stockholders to pay in. It has been frequently held that if the promoters of a corporation begin to do business before the minimum capital stock is subscribed for, they are liable as partners. We think, therefore, that it would do violence to the spirit of our laws to hold that a corporation might, after organization, divest itself of this contemplated asset by allowing the corporation thereafter to do any act which would in effect [re]turn to the stockholders, directly or indirectly, a portion of the [capita]l paid in, or to be paid in, where the effect of so doing would [a]reduce the outstanding stock below the minimum stated in [the cha]rter. Upon examination of the facts of this case, however,

ret

cap

be

t

we find that the effect of the purchase of this capital stock was not to reduce the capital below the minimum required in the charter.

As to ordinary corporations in this State, there is no law which forbids a corporation, so long as it is solvent and so long as no rights of creditors are interfered with, from bona fide buying in a portion of its capital stock, provided that the transaction relates only to such capital stock as shall have been issued in excess of the minimum amount stated in the charter. In the present case the corporation was expressly authorized by its charter to increase or diminish its capital stock within certain limits, which were not violated. It may be true in such cases that the increasing or diminution is such a corporate function as that the president or general manager could not ordinarily, as a function of his office, perform it; but as we have already said, the evidence authorized the jury in this case to find that the corporation had ratified the act of the president. The corporation was solvent, and no rights of creditors are shown to have been violated. Indeed, it is not the creditors who are complaining; the corporation itself is attempting to repudiate the transaction. We see no reason at all for holding that as against the corporation itself the transaction was invalid. There is a great difference in the rule to be applied where creditors are complaining of transactions between a corporation and its stockholders, and where the corporation itself is the moving party.

*Judgment affirmed.*