5759.  HENDERSON *et al.* v. MAYSVILLE GUANO CO.

1. An exception to the refusal to award a nonsuit will not be considered where the jury has rendered a verdict against the defendant, and exception is taken to the refusal to grant a new trial on the ground that the verdict was not supported by evidence.

2. Even if an inquiry as to the disqualification of a juror is confined to the question as to his qualification at the time of the trial, an objection to a juror propter affectum, on the ground that his brother-in-law is a member of a partnership owning shares of stock in the plaintiff corporation, is not met by proof that before the trial the stock was transferred to a trustee, under an adjudication in bankruptcy, in which both the brother-in-law of the juror and the partnership of which he was a member were adjudged bankrupts. A trustee in bankruptcy is a mere agent of the court, to do what the law presumes the debtor would himself desire to do,—discharge the just obligations of the debtor. The payment of one's debts, whether voluntary or at law, is a benefit to the debtor; and while an adjudication in bankruptcy may change the quantum of interest, it does not altogether remove the debtor's interest in his property which is in the hands of the trustee, or qualify a brother-in-law of the bankrupt, who, prior to his bankruptcy, had an interest

in the shares of a corporation, to sit in a case in which that corporation is a party. In every trial both parties are entitled to a full panel of jurors who are omni exceptione majores. And if more than one motive appears, and there is uncertainty as to which interest, if any, may affect the juror, there is no less reason for rejecting him than if his particular bias were clearly shown; the purpose of the law being to provide for a trial by jurors altogether impartial.

3. Proof that one who was indebted to two persons (both of whom were represented by the same agent) paid the dual agent a sum sufficient to discharge the obligation upon which the suit is based shifts the burden of proof from the defendant; and when, in denial of the plea of payment, it is contended that the debtor's payment, in the absence of any direction upon the part of the debtor, was applied to discharge another obligation instead of to the debt in suit, the existence and validity of the obligation to which the payment was applied must be established, and it must be shown that the debt was due, and was of such an amount as to have exhausted the payment made by the debtor.

4. The original books of a mercantile or other business should be accounted for, before secondary evidence of their contents can be admitted. *Phillips* v. *Trowbridge*, 86 *Ga.* 700 (13 S. E. 19).

5. The instructions of the court upon the subject of partnership were erroneous, even if the question of partnership was involved. In a case involving more than one issue it is error, in the charge, to withdraw from the consideration of the jury any material issue in the case, or to confine them to the consideration of only one of the issues involved.

6. In the application of payments, the debtor's intention may be said to govern, since the appropriation of a general payment, whether directed by the debtor or applied by the creditor or by the law, is in legal intendment made in accordance with the debtor's intention; and the intention to pay an alleged debt not proved to exist, or a debt not due, can not be presumed. In any case in which only one demand is proved to exist, and a payment has been made without any direction, the law will apply it to the payment of that demand. In the absence of evidence showing the amount, maturity, and validity of the alleged demands against the debtor, to the extinguishment of which the admitted payment was alleged to have been appropriated, the court erred in failing to instruct the jury, in effect, that if only one demand is proved to exist, and a payment has been made without any direction, the law will apply it to that demand.

DECIDED AUGUST 22, 1914.

Complaint; from city court of Jefferson—Judge Johns. May 7, 1914.

*W. W. Stark,* for plaintiffs in error.

*Green, Tilson & McKinney, L. G. Fortson, J. S. Ayers,* contra.

RUSSELL, C. J. 1. In the motion for a new trial error is assigned upon the refusal of the court to grant a nonsuit upon the motion of the defendants' counsel, at the close of the plaintiff's testimony. As was held in *Atlantic Coast Line Ry. Co.* v. *Blalock,*

8 *Ga. App.* 44 (68 S. E. 743), "An exception based upon the refusal
of the court to award a nonsuit will not be considered, where, sub-
sequently thereto, the case is submitted to the jury, and, a verdict
being rendered against the defendant, a motion for a new trial is
made which presents the complaint that the verdict is contrary to
the evidence and without evidence to support it. Where a motion
for a new trial is based upon this ground, the court will review the
sufficiency of the evidence as a whole, in the light of the verdict,
and will not merely consider the sufficiency of the plaintiff's case
to withstand the nonsuit at the particular stage at which the mo-
tion for nonsuit was made." It is never necessary to except to the
refusal of a nonsuit where the trial has resulted in a verdict for the
plaintiff and the defendant has excepted to the verdict on the
ground that it is without evidence to support it; for the latter ex-
ception raises the whole question more adequately than the excep-
tion to the overruling of the motion for a nonsuit would present it.
Even if the motion for a nonsuit should have been sustained at the
time it was made, and was therefore erroneously overruled, never-
theless, if the subsequent testimony cured the deficiency in the
plaintiff's proof, the judgment would not be reversed merely because
the court refused to grant the nonsuit. On the other hand, if the
deficiency in the plaintiff's case was not cured by the subsequent
testimony, a verdict in favor of the plaintiff would be without evi-
dence to support it, and upon that ground would be set aside.

2. We shall not consider the several grounds of the motion for
a new trial in the order in which they are presented, but will deal
first with the assignment of error in which complaint is made that
one of the jurors was disqualified from sitting in the case. We
shall treat the case in this order because it has frequently been held
by this court and by the Supreme Court that a trial by jurors not
entitled to sit in the cause is in law no trial. *Smith* v. *State,* 2 *Ga.
App.* 574 (59 S. E. 311) ; *Georgia R. Co.* v. *Cole,* 73 *Ga.* 713 (2).
In the case now before us, Pittman, one of the jurors, was a brother-
in-law of Boyd, one of the members of the partnership of Carr, Boyd
& Company, which firm were stockholders in the Maysville Guano
Company at the time of the purchase of the guano which was the
consideration of the note sued on. It is insisted by learned counsel
for the defendant in error that the test as to the disqualification of
a juror is to be applied only at the time of the trial. In other

words, it is insisted that though the juror's brother-in-law, Boyd, as one of the partners of Carr, Boyd & Company, might have been interested in the stock in the Maysville Guano Company, held by that firm in May, 1912, the juror was not disqualified at the time of the trial, in December, 1913, because in the meantime both the partnership of Carr, Boyd & Company and Boyd individually had been adjudged bankrupts, and their interest in the guano company, represented by the shares of stock, had been transferred to the trustee in bankruptcy. And this seems to have been the view entertained by the trial judge in overruling the motion for a new trial. The paramount essential of a legal trial by a jury is that the jury be absolutely impartial; and it is better to err on the side of extreme strictness, in adherence to the requirement that jurors should be free from even the suspicion of prejudice or bias—above every objection—than that the rule be relaxed, with the tendency to admit jurors who may be influenced by aught else than a conscientious desire to administer equal and exact justice. Granting that the term "disqualification," as applied to a juror, refers to the time of the trial, we can not concur in the view entertained by counsel, to the effect that the disqualification of the juror Pittman was removed when the stock in which Boyd was interested as a joint owner was transferred to the trustee in bankruptcy. It is true that ordinarily after a bankrupt's estate has passed into the hands of a trustee, he has but little further direct interest in it, for it is unlikely that it would ever again come into his possession, but as every honest man must be assumed to be anxious that his just debts be paid, such a man would have the same interest in his property which is being appropriated to the payment of his just debts as he would have if the property had remained in his manual possession with the understanding that he himself would use it in their payment. The trustee sustains a mere fiduciary relation to the insolvent debtor. He is a mere agent of the court to do what the law presumes the debtor himself would have done,—apply the debtor's property to the payment of his debts; and the proceeding in bankruptcy is presumed to be necessary in order to accomplish the payment of the debtor's indebtedness in an orderly manner, and without such interference as would tend to dissipate the property in useless litigation. We speak advisedly when we say this is the presumption. In this view of the case Boyd had as much interest in

his stock in the hands of the trustee in bankruptcy as he had in the same stock before the adjudication in bankruptcy, and for this reason his brother-in-law was as much disqualified at the time of the trial as at the time the guano was purchased. Changing circumstances may have reduced the quantum of interest, but it did not remove that interest which legally disqualifies the brother-in-law of one having a financial interest in the shares of a corporation from sitting in a cause in which that corporation is a party. To create a disqualification on the part of a juror, or to sustain an objection to the juror propter affectum, it is not always necessary that a financial interest on his part should exist. The theory that the juror is objectionable propter affectum is based upon the cardinal meaning of the term. Any desire that one party to a cause, rather than the other, should prevail is a good ground of challenge to a juror. For this reason we think the fact that the juror Pittman was a brother-in-law of a stockholder in the plaintiff company disqualified him from sitting in the cause; and (while the point is not raised) the fact that Boyd was a member of the firm of Carr, Boyd & Company might of itself have been sufficient to disqualify Pittman from serving as a juror in the cause. It is undisputed in the evidence that the defendants, or one of them, turned over to Mr. Carr, who was both president of the guano company and a member of the firm of Carr, Boyd & Company, some live stock of a value more than sufficient to have discharged the defendants' indebtedness to the guano company. There is evidence in the record that the proceeds of the sale of the live stock were appropriated upon the indebtedness of the defendants to Carr, Boyd & Company. There was no way of ascertaining whether it was more to the interest of Boyd (and it is by Boyd's interest that the law assumes that his brother-in-law, the juror, would be affected) to have the money appropriated to the indebtedness to the guano company, of which he was a stockholder, or to the indebtedness of Carr, Boyd & Company, in which he was a partner, or whether, after all, it was more to his interest not only to retain the money already received upon the account of Carr, Boyd & Company, but also to collect from the defendants the debt due to the guano company and thus to collect both claims in which he was interested. In this uncertainty of motive, which no human mind can fathom, it can not be gainsaid that jurors could have been obtained who would have been less

likely to be embarrassed by the circumstances than this juror may have been; and every litigant is entitled to the most impartial juror whom, under the rules of law, it is within the power of the court to provide. Jurors should be free from any objection which rests upon a probable interest.

3. One of the main questions presented in the trial of the case concerns the plea of payment and the propriety of the application of a payment shown to have been made to Mr. Carr, who was acting either in behalf of Carr, Boyd & Company or of the plaintiff guano company, of which he was president. The defendant R. C. Henderson delivered to Mr. Carr live stock of the approximate value of $1,700, after the admitted indebtedness for guano had been created. The evidence is in dispute as to whether direction that the payment be applied upon the debt due the plaintiff was given at the time the stock was delivered to Carr, or at a time when the payment had already been appropriated to the debt to Carr, Boyd & Company, but there is no dispute that one of the defendants gave such direction before any proceedings in bankruptcy, and, so far as appears, before the maturity of the indebtedness due to Carr, Boyd & Company. The record does not disclose the amount of the indebtedness of the defendants to Carr, Boyd & Company. The simple question raised, therefore, is: Does a defendant, by proving the payment of a sum sufficient to discharge an outstanding obligation, payment of which is demanded, shift upon the plaintiff, when the plaintiff claims that the payment was appropriated to the satisfaction of another debt of the defendant, the burden of showing the nature and amount of the indebtedness, and that the plaintiff was entitled so to apply it in the absence of any direction on the part of the debtor? It is not contended by the plaintiff in this case that the defendant R. C. Henderson directed that the live stock delivered by him to Mr. Carr be appropriated as a payment upon the indebtedness to Carr, Boyd & Company; but it is claimed that the proceeds of the sale of the live stock were appropriated by Carr to that indebtedness in the absence of any direction, and in the creditor's exercise of his option of applying the payment to either of two debts in the absence of direction by the debtor.

It is to be questioned whether the payment in this case falls under the rule as to the application of a payment made by a debtor to a creditor having two or more demands, as laid down in section 4316

of the Civil Code, for in this case the question concerns not the application of a payment to one creditor, but rather the question is as to how the payment, which was made to a single person who was at the same time the agent of two distinct creditors, is to be appropriated.  In other jurisdictions it has been held that where one is exercising a dual agency, and sustains a fiduciary relation to two distinct parties, each of whom holds a demand against the debtor, and a payment is made by the debtor, without any direction being given by him, the payment shall be ratably apportioned by the dual agent to both demands, in proportion to the amount of each.  But if we concede that the rule as to payments by a debtor to a creditor having more than one demand is applicable to a case like that now before us, in which the payment is made to a dual agent of two distinct creditors, it seems to us that, even in the absence of a direction by the debtor, the dual agent can not successfully support a claim that the payment has been appropriated to the discharge of a demand the existence and validity of which have not been demonstrated.  It would further appear to be true that since, in defense of a suit upon an account, the defendant would be entitled to be discharged upon proof that he had paid an amount sufficient to discharge his indebtedness to a duly authorized agent of the plaintiff, it would devolve upon the plaintiff to rebut such proof of payment, by proof either that the payment was never made, or that it was made to a person not authorized to receive it in behalf of the plaintiff.  If we are correct as to this, then undoubtedly whenever a defendant proves a payment to one shown to be an agent of the plaintiff, the burden is shifted, and it devolves upon the plaintiff to show not only that he did not receive the payment, but that he is not chargeable with the payment made to his agent; for if the payment was made to an agent duly authorized to collect it would be none of the defendant's concern if it was misappropriated.  If a debtor pays an agent who is authorized to receive it for the creditor, the payment is good even though the agent be false to his principal and the creditor in fact never receives the payment.  For this reason, when it was proved that the defendant R. C. Henderson paid to Mr. Carr, who was duly authorized, as president of the guano company, to collect for that company, an amount sufficient to discharge the indebtedness to the present plaintiff, the defense of payment was established, prima facie at least; and while

the evidence that the payment was not properly made might come as well from the testimony of the defendants' witnesses as from those who testified in behalf of the plaintiff, the duty of showing that the payment which had been established prima facie was in fact not made devolved upon the plaintiff. If the plaintiff, in thus carrying the burden which had shifted to it, did not deny that the payment was made to the person who was its agent, but merely insisted that the payment was not made to that person as its agent, then that fact should be established. The plaintiff did not deny that the payment was made to Carr, nor that Carr was its agent, nor did Carr positively deny that he was directed by Henderson to apply the payment to the indebtedness to the guano company. It was therefore error to direct the verdict as to R. C. Henderson.

Furthermore, it was error to refuse to charge, in substance, the principle stated in the defendants' request for instructions that the plaintiff could not rebut the defendants' evidence as to the payment by proof that the payment had been appropriated to the satisfaction of the debt to Carr, Boyd & Company, unless it was made to appear that there was indebtedness of the defendants to Carr, Boyd & Company, and that this indebtedness was sufficient in amount to have absorbed the entire payment. The defendants having shown that they had paid enough to discharge the debt to the guano company, and this fact being undisputed, the testimony of the dual agent, Mr. Carr, to the effect that, though authorized to collect for the guano company, he had appropriated the payment to the demand of Carr, Boyd & Company, was not sufficient to relieve the plaintiff from the legal consequence of the payment to its agent, unless the plaintiff further made it to appear that this payment made to its agent, although he was also the agent of another party, was not misappropriated, but was legally appropriated upon another demand. It would have been necessary to show the amount and maturity of the account of Carr, Boyd & Company, and that the plaintiff's agent did not misappropriate the fund. To illustrate the proposition: If Henderson had paid Carr, who was the agent of the guano company, and known by the debtor to be such, $1,700, sufficient to discharge the plaintiff's claim, and Carr had misappropriated the money, the payment would be good and the debt would be discharged. Therefore, when the defendants show a payment to one authorized to collect it for the plaintiff, it is the duty

of the plaintiff to show that it was not misappropriated but was properly expended. That the money thus paid was properly expended might be shown by evidence that the money was used for the defendants' benefit, either in the purchase of property for them, the payment of indebtedness of the defendants at their request, or in other ways; but the proof must show that it was properly expended; and where the claim is made that it was used in satisfaction of another account, the evidence must satisfactorily disclose the existence and validity of that account; and certainly this could not be done without some evidence as to the amount and maturity of the alleged claim. It would be a great hardship to place upon a defendant the duty of showing that a payment made by him to an agent of his creditor had been misappropriated, and an especial hardship when it is considered that by such proof he would establish nothing more beneficial to his own cause than the original proof that he had paid the plaintiff's agent. If the testimony in the present case disclosed that the defendants had directed Mr. Carr to apply this payment to the account of Carr, Boyd & Company, of course, taking into consideration the dual capacity in which Mr. Carr acted, both for the guano company and for Carr, Boyd & Company, the fact that he was agent for the guano company would be of no significance, and the defense of payment would be worthless. On the contrary, however, the stress of the case is as to whether Henderson directed Carr to apply the payment upon the indebtedness for guano, or whether he made the payment without any direction; and even in the latter event the plaintiff's agent (although he happened to be the agent of Carr, Boyd & Company) could not apply it to the detriment of the rights of his principal, the guano company, unless, at least, he was assuming to act in good faith as the agent of Henderson, in which case he should be able to show plainly what disposition was made of Henderson's money or property. Of course he could not make this showing without proof of such facts as would show that Henderson obtained value received for the entire fund. The difficulties of a dual agency are pointed out in Scripture, in which we are told that one can not serve two masters. It seems to us that a payment to an agent of the guano company, made without any instructions, would presumably be a payment to be delivered by that agent to the guano company. Counter instructions by the defendant would make a different case, and other circumstances might

have the same effect. Among such circumstances would be the payment of a debt for the defendant's benefit; but the proof would be insufficient unless the existence of the debt was established, and its amount and maturity shown. What we have said above deals with the assignments of error relating to the refusal of the court to give instructions requested upon this subject, and to the insufficiency of the proof, as well as to the direction of the verdict.

4. It is well settled, of course, that books of account are primary proof of their contents, and that oral declarations as to entries therein are inadmissible where the books themselves are accessible. For that reason the ruling in the 4th headnote needs no elaboration.

5. The court erred in the following charge to the jury, upon which error is assigned: "So when you determine whether or not there was a partnership, you have solved the whole question in this case." This was erroneous because the question of partnership was not involved, for neither defendant had filed a plea under oath denying partnership. But even had the question of partnership been involved, the language used had the effect of withdrawing other issues from the consideration of the jury, by confining them to this single issue, and was for that reason erroneous. If the jury, in conformity with the instructions of the judge, confined themselves solely to the question whether the Hendersons were partners, they were compelled to overlook the far more important question to which we have already referred in the second division of this opinion.

6. Under the evidence submitted in the trial now under review, the plaintiff was not entitled to recover. To have entitled the plaintiff to recover on the theory that the payment made to Mr. Carr had been applied by him in the exercise of his option as a creditor holding two demands against the debtor, it would have been necessary to establish the existence of two demands, whereas only one of them was proved. The debtor has the first right to direct the application of a payment, where there are several demands against him, and it is only when such direction is omitted that the appropriation of the payment can be made by his creditor. The application of payments may be directed by the debtor, or be made by the creditor, or by law, based upon the presumed intention of the debtor. In the application of every payment, however, whether by express direction by the debtor, or by the creditor, or by law, the application is presumed to be made in accordance with the debtor's

intention. Hence, in the application of a payment, the debtor's intention may be said to govern; and the intention to pay an alleged debt not proved to exist, as well as the intention to pay a debt not due, can not be presumed. In the absence of evidence showing the amounts, maturity, and validity of the alleged demands against the debtor, to the extinguishment of which the payment admitted to have been made was alleged to have been appropriated, the failure of the trial judge to instruct the jury, in effect, that if only one demand is proved to exist, and a payment has been made without any direction, the law would apply it to the payment of that demand, was error. McDonnell v. Bank, 20 Ala. 313.

*Judgment reversed. Roan, J., absent.*