CIVIL SERVICE INV. ASS'N *v.* C. B. THOMAS *et al.*

(*Jackson,* April Term, 1917.)

CORPORATIONS.  Right to purchase stock from shareholders.
By-laws of a real estate development corporation, organized under Laws 1875, chapter 142, section 23, permitting shareholder to sell stock back to corporation, which resulted in the diminution of capital stock, *held* invalid in view of its charter which only empowered corporation to take its own stock in payment for real estate, and limited powers to those especially granted or necessarily implied, and statutes specifically providing a method for reducing capital stock, and upon tendering back certificates, corporation could recover amount paid the stockholder in thus repurchasing stock.

Cases cited and approved: Trevor v. Whitworth, L. R., 12 App. Cas., 409; Cartwright v. Dickinson, 88 Tenn., 476; Herring v. Ruskin Co-operative Ass'n, 52 S. W., 327; Schulte v. Boulevard Gardens Land Co., 164 Cal., 464; Kelley v. York, etc. Co., 94 Me., 374; Wilson v. Torchon Lace & Mercantile Co., 167 Mo. App., 305; Maryland Trust Co. v. Nat. Mechanics' Bank, 102 Md., 608; Dalton Grocery Co. v. Blanton, 8 Ga. App., 809; Re-Tichenor-Grand Co., 203 Fed., 720; Green v. Ashe, 130 Tenn., 615.

---

FROM SHELBY

---

Appeal from the Chancery Court of Shelby County. —F. H. HEISKELL, Chancellor.

S. E. MURRAY, for appellant.

JOHN JOHNSTON, for appellees.

Mr. Justice Williams delivered the opinion of the Court.

The bill of complaint was filed by the Civil Service Investment Association, a Tennessee corporation organized under Acts 1875, chapter 142, section 23, to engage in the business of developing real estate, the object being to recover of Thomas the sum of $1,800 claimed to have been illegally drawn from its treasury by him.

On the association's beginning business the following by-law was passed:

"On January 1st and July 1st of each year any stockholder can withdraw from the association by surrendering his certificate of stock or receipt for his equity in the same and will receive the amount paid into the association within one hundred and eighty days from date of application."

This was among the by-laws that were printed and distributed in pamphlet form. Thomas by a number of successive purchases became the owner of twenty-three shares of the capital stock. On July 1, 1914, being at the time vice president of the corporation, he made application to withdraw, and was allowed to do so. The president then in office also withdrew his shares. Withdrawals of this character left the capital stock considerably impaired.

The bill of complaint charges that the attempted purchase by the bank of these shares of defendant was *ultra vires* and void, and that "the attempted

cancellation of his stock was an effort to reduce the capital stock.''

The charter of .the association provided:

''By no implication or construction shall the corporation be deemed to possess any powers except those hereby expressly granted or necessarily implied from the nature of the business for which the charter is granted. . . .

''Said corporation may take its own stock in payment for real estate and cancel said stock, provided the debts of the corporation do not exceed twenty-five per centum of the value of the real estate unsold.''

The association is not insolvent; the suit is that of the corporation in its own right, and is not brought for the benefit of creditors.

The chancellor entered a decree dismissing the complainant's bill, and it has appealed and assigned errors.

There is a sharp division in the authorities on the question whether a corporation has power to purchase its own shares of stock, where there is no restraining provision in the charter or statute.

In England the rule is that a corporation, in the absence of statutory authority, cannot purchase its own shares. The question there was put to rest by a decision of the House of Lords in *Trevor* v. *Whitworth,* L. R., 12 App. Cas., 409, 57 L. J. Ch. N. S., 28, where it was held that such a transaction was *ultra vires* on the ground that, if the shares were pur-

chased for the purpose of selling them again, it constituted a trafficking in shares, and if they were purchased for the purpose of retaining them, it constituted an indirect mode of reducing the capital stock of the company.

A majority of the American courts announce a doctrine contrary to that of the English courts. Our text-writers are also divided in opinion on the question. Morawetz, on Private Corporations, sections 111-113, is in agreement with the English rule:

"Whatever a transaction of this character may be called in legal phraseology, it is clear that it really involves an alteration of the company's constitution. . . . The amount of the company's assets and the number of shareholders are diminished; every continuing shareholder is injured by the reduction of the fund contributed for the common venture. . . . The fact that such a transaction may not necessarily be injurious to any person is not sufficient reason for supporting it. It is contrary to the fundamental agreement of the shareholders, and is condemned by the plainest dictates of sound policy."

This court gave its adherence to the English rule, citing Morawetz, in *Cartwright* v. *Dickinson*, 88 Tenn., 476, 485, 12 S. W., 1030, 7 L. R. A., 706, 17 Am. St. Rep. 910, and said that whatever power a corporation may have to deal in its own shares for purposes of sale or to secure a debt, it could not reduce its authorized capital by purchasing its own

shares for cancellation.   See, also, *Herring* v. *Ruskin Co-operative Ass'n,* 52 S. W., 327, in accord.

By provisions of our statutes the amount of the authorized capital stock must be set forth in the charter, or an amendment thereto.   Reduction of the capital stock is provided for by a statute which makes is necessary that two-thirds of the outstanding stock at the time of the proposed action vote in. favor thereof, and it is consummated by a registered amendment to the   charter.   The act is the formal and solemn one of changing the fundamental law of the corporation.

As noted, the taking over of the shares of Thomas left the corporation's capital stock impaired to the extent of $30 on the share of $100 each.   We are not, therefore, dealing with a case where a purchase of its own shares by a corporation is sought to be upheld on the ground that surplus funds were used for that purpose.

We are of opinion that it is not competent for the members of a corporation to override the policy of the law, thus manifested in legislative acts; and work a change in the charter or constitution which it received from a power above it, the state, by a mere by-law such as the one advanced here as justification for the purchase of the shares of Thomas.

In *Vercoutere* v. *Golden State Land Co.,* 116 Cal., 410, 48 Pac., 375, the sole reliance was on a by-law which assumed to authorize every subscriber and

stockholder to withdraw from the corporation, and, upon returning his stock, receive what had been paid in. The court held the by-law invalid, and in a later case approved the ruling by saying:

"Obviously this, if upheld, would have made possible a complete destruction and dissolution of the corporation without compliance with the statutory requirements. As a by-law, the provision was clearly bad." *Schulte* v. *Boulevard Gardens Land Co.*, 164 Cal., 464, 129 Pac., 582, 44 L. R. A. (N. S.), 156, Ann. Cas., 1914B, 1013.

Such a by-law is a standing invitation to the members of the corporation, who should be the guardians of its welfare, to bring the corporate entity to destruction. The  shareholder who is most familiar with the internal workings of the company, by reason of official position held by the grace of his fellows, or the most timid or suspicious, would, to save himself, start a run to get back his contribution to the capital stock, and in a case such as this the faithful remnant would be remediless, "the devil taking the hindmost." The by-law relied upon by defendant runs counter to the policy of the law touching the nature and stability of a corporation's capital stock. 1 Cook, Corp. (6 Ed.), section 170; *Kelley* v. *York, etc., Co.*, 84 Me., 374, 47 Atl., 898; *Wilson* v. *Torchon Lace & Mercantile Co.*, 167 Mo. App., 305, 149 S. W. 1156; *Maryland Trust Co.* v. *Nat. Mechanics' Bank*, 102 Md., 608, 63 Atl., 70. And see *Dalton Grocery Co.*

v. *Blanton*, 8 Ga. App., 809, 70 S. E. 183; *Re Tiche-nor-Grand Co.* (D. C.), 203 Fed., 720.

The transaction of repurchase sought to be sustained being that of the corporation, and not being one where shares were taken in payment for real estate, the by-law falls, and the corporation is entitled, on tendering back the certificates, to recover of the seller the amount passed to him in the attempted repurchase. *Green* v. *Ashe,* 130 Tenn., 615, 620, 172 S. W., 293, and cases cited.

The chancellor erred in not so holding. Reversed and remanded.