## KAMINSKY et al. v. PHINIZY.
### No. 6289.

Circuit Court of Appeals, Fifth Circuit.
Dec. 3, 1931.

Rehearing Denied Dec. 19, 1931.

Herschel P. Cobb and O. E. Bright, both of Savannah, Ga., for appellants and cross-appellees.

W. K. Miller, of Augusta, Ga., for appellee and cross-appellant.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

By his bill in equity the appellee, the trustee in bankruptcy of the Ferst Motors, Inc., a corporation, which was adjudged bankrupt in June, 1930, charged the appellants, Miller Kaminsky, Solomon Kaminsky, Barney Kaminsky, and Chatham Motor Company, Inc., with liability for the amount of moneys of the bankrupt paid to appellants on September 13, 1928, in a transaction which resulted in the three Kaminskys selling one-half of the then outstanding capital stock of Ferst Motors, Inc., then owned by them. That transaction was attacked on the ground that it was fraudulent, and the bill as amended alleged that at the time of that transaction there were named creditors of the bankrupt who continued to be such down to the time of the bankruptcy. That allegation was put in issue. An allegation of the bill that the bankrupt was incorporated with a capital stock of $10,000, with

the privilege of increasing the capital to the sum of $100,000, was admitted. The court made findings of fact to the following effect: At the time of the increase in 1927 of the bankrupt's capital stock from $10,000 to $30,000, its assets were sufficient to justify the declaration of a stock dividend up to $30,000 and to have a surplus of $5,000. There was no formal action taken declaring a stock dividend, but the action that was taken—by the receipt on the part of those entitled to such dividends of the stock of the corporation—was equivalent thereto. The $20,000 of stock issued to increase the capital was justified, and was for the consideration of the profits then earned, and the note for $5,000 to the Chatham Motor Company, Inc., was justified for the same reason. The value of the capital stock in September, 1928, when the stock of the Kaminskys was sold to Ferst, was $25,000. While the sale of the stock was from the Kaminskys to Ferst, inasmuch as the Kaminskys knew that Ferst was paying for such stock with assets of the corporation, the legal effect, as against the creditors, was the same as if the sale had been made of the stock directly to the corporation. The payment for the stock was made by a check of the corporation for $12,200 and by an increase of the note to the Chatham Motor Company, Inc., by $300, which was subsequently paid. For the reason that of the $12,200 so paid by check $5,000 of it was raised by Ferst on his individual note and placed on deposit to the credit of the corporation, the assets of the corporation were in fact utilized only to the extent of $7,200 in payment of such check, and said corporation also used its assets to pay the $300 additional. There was no fraudulent intent on the part of the Kaminskys in selling their stock. At the time of the sale of the stock in 1928, the corporation, Ferst Motors, Inc., was solvent. The court made no finding as to the bankrupt, at the time the petition in bankruptcy was filed, owing or not owing any debt which was in existence when the attacked transaction occurred. By the decree rendered, the court adjudged that each of the three Kaminskys was liable to appellee in the sum of $2,500, with interest from September 13, 1928, and the costs were taxed against them.

By the transaction in question, the bankrupt paid to the Kaminskys the price of stock in the bankrupt corporation owned by them. Under the law of Georgia, that was permissible, in the absence of fraud, and if the transaction did not have the effect of reducing the outstanding capital stock of the corporation below the minimum stated in the corporation's charter. Fitzpatrick v. McGregor, 133 Ga. 332, 65 S. E. 859, 25 L. R. A. (N. S.) 54; Dalton Grocery Company v. Blanton, 8 Ga. App. 809, 70 S. E. 183. What is meant by "the minimum capital stock" is the lowest amount named where the charter states that the capital shall be a stated sum with a privilege of increase. Rosenheim Shoe Co. v. Horne, 10 Ga. App. 582, 587, 73 S. E. 953. The transaction in question—which did not have the effect of reducing the bankrupt's capital stock below the minimum stated in its charter—being a payment by the corporation, when it was solvent and more than four months prior to bankruptcy, for shares of its stock, the transfer of the bankrupt's money was not subject to be avoided at the instance of the trustee in bankruptcy, unless it might have been avoided by a creditor of the bankrupt. Bankruptcy Act § 70e (11 USCA § 110(e). There was no finding that any party to the transaction intended to defraud subsequent creditors of the bankrupt, and there was no finding that at the time of the bankruptcy the bankrupt owed any debt which was in existence when the challenged transfer was made. If that transfer was voidable by any one, when bankruptcy occurred it was not voidable by a creditor other than one who was a creditor when the transfer was made. Graham v. Railroad Company, 102 U. S. 148, 26 L. Ed. 106; McDonald, Receiver, v. Williams, 174 U. S. 397, 403, 19 S. Ct. 743, 43 L. Ed. 1022; Fitzpatrick v. McGregor, supra. The allegation of the amended bill as to the bankrupt, at the time of the attacked transaction, owing a debt or debts which were in existence at the time of the bankruptcy, was of a fact essential to the existence of the right asserted by the suit. Battle v. Williford, 160 Ga. 289, 127 S. E. 763. The evidence was not such as to require a finding that, after the bankruptcy occurred, the bankrupt owed any debt which was in existence at the time of the attacked transaction. There was evidence that at the time of the bankruptcy the bankrupt owed a bank a balance on a debt which was in existence on and prior to September 13, 1928. But evidence also showed that, at the time of the bankruptcy, that bank had in hand a fund, amounting to considerably more than that balance, which was applicable to the payment of it, and the evidence failed to show the existence and validity of other debts of the bankrupt to the payment of which the fund mentioned was subject to be applied.

In the stated condition of the evidence, a finding that the above-mentioned balance remained unpaid was not warranted. Henderson v. Maysville Guano Co., 15 Ga. App. 69, 82 S. E. 588. The evidence failed to show that, at the time the suit was brought, the challenged transaction was subject to be avoided at the instance of the appellee.

We conclude that under the court's findings of facts and the evidence the claim asserted by the bill was not sustainable. The decree is reversed.