JAMES E. PETRE *et al. v.* W. R. BRUCE *et al.**    :

and

SAM R. SMITH AND JACK WHITE *v.* W. R BRUCE *et al.*

(*Nashville.* December Term, 1927.)

Opinion filed June 16, 1928.

1. CORPORATIONS. DIRECTORS. ISSUANCE OF STOCK. INJUNCTION.

The Chancery Court has power to issue injunction, at the instance . of a stockholder and an officer and director of a corporation, restraining the remaining directors from issuing stock in the corporation in disregard of the rights of stockholders to subscribe **pro rata** to such stock, both of shares of stock which had never been issued and shares which had been issued and bought in by the corporation and designated as treasury stock. (Post, p. 135.)

Citing: 7 R. C. L., 206; 14 C. J., 394; Cook on Corporations (8 Ed.), vol. 1, sec. 70; Thompson on Corporations, vol. 5, pp. 474-477; Luther v. Luther Co., 118 Wis., 112; Endicott v. Baker (Mass.), 80 N. E., 450; Way v. American Grease Co., 60 N. J. Eq., 263; Whittaker v. Kilby, 106 N. Y. Supp., 511; Reese v. Bank, 31 Pa., 78; Electric Co. v. Edicon Electric Co., 200 Pa. St., 516; Jones v. Ry. Co., 67 N. H., 119; Crosby v. Stratton (Colo.), 68 Pac., 130; Humboldt Driving Park Assoc. v. Stevens, 34 Neb., 528; Eidman v. Bowman, 58 Ill., 444; Titus v. Bank (Idaho), 179 Pac., 514.

2. CORPORATIONS. NO POWER TO PURCHASE OWN STOCK.

Where it appears that four shares of stock were sold upon the organization of a corporation and subsequently purchased by the corporation, such purchase was illegal. (Post, p. 136.)

Citing: Darnell-Love Lbr. Co. v. Wiggs, 144 Tenn., 113, 120, citing Whaley v. King, 141 Tenn., 1, 206 S. W., 31; Civil Service Invest. Ass'n v. Thomas, 138 Tenn., 77, 195 S. W., 775; Herring v. Ruskin Co-op. Ass'n (Ch. App.), 52 S. W., 327; Cartwright v. Dickinson,

88 Tenn., 476, 12 S. W., 1030, 7 L. R. A., 706, 17 Am. St. Rep., 190.

3. **CORPORATIONS. TREASURY STOCK. POWER OF DISPOSAL.**

Ordinarily a corporation may dispose of treasury stock. (Post, p. 136.)

Citing: 14 C. J., 407.

4. **CORPORATIONS. PURCHASE OF OWN STOCK ILLEGAL.**

In the absence of statutory authority, a corporation cannot purchase its own stock, which it has issued, for the purpose of creating treasury stock, even though it may have power to purchase shares of its own stock for a legitimate corporate purpose, as such a purchase is not for a legitimate corporate purpose. (Post, p. 136.)

Citing: 14 C. J., 408; Knickerbocker Import. Co. v. State Bd. of Assessors, 74 N. J. L., 583, 65 Atl., 913, 9 L. R. A. (N. S.), 885.

5. **CORPORATIONS. TREASURY STOCK. DIRECTORS. TRUST RELATION.**

Even where the corporation is authorized to purchase its outstanding stock, it would seem that the directors, in their trust relation to the stockholders, cannot dispose of such stock for the purpose of acquiring a majority of the stock, and thus gain control of the corporation. This is not a fair exercise in good faith of the power with which they are clothed. (Post, p. 136.)

Citing: Dunn v. Acme Co. (Wis.), 169 N. W., 279; Jones v. Morrison (Minn.), 16 N. W., 854; Elliott v. Baker, 194 Mass., 518.

6. **CORPORATIONS. BY-LAWS. UNREASONABLE IN RESTRAINT OF TRADE.**

By-laws of a corporation organized for profit, which undertake to restrain the transfer of its stock, by requiring the stockholders to give the board of directors an option to purchase same at its actual worth and in case of disagreement as to value, such value shall be determined by the superintendent, declaring that no transfer shall be made except upon the order of the board of directors and that any stock assigned, except as above provided, shall not be considered in good standing, and shall not be en-

titled to participate in dividends, is in restraint of trade and invalid, even though agreed to by all parties. (Post, p. 137.)

7. CORPORATIONS. PURCHASING OWN STOCK. CO-OPERATIVE ASSOCIATIONS.

The Act of the Legislature authorizing the incorporation of co-operative associations, and permitting them to invest a percentage of their capital stock in the capital stock of corporations organized thereunder does not authorize corporations organized for profit to traffic in its stock on the theory that it is a co-operative association. (Post, p. 138.)

Citing: Acts of 1917, ch. 142; Steele v. Farmers & Merchants Mutual Telephone Ass'n, 95 Kan., 580, 148 Pac., 661; Herring v. Ruskin Co-op. Ass'n (Ch. App.), 52 S. W., 327; Civil Service Invest. Ass'n v. Thomas, 138 Tenn., 77, 195 S. W., 775.

8. CORPORATIONS. TRANSFER OF STOCK. RIGHT TO VOTE. INJUNCTION AGAINST DIRECTORS.

An injunction will lie to restrain the board of directors of a corporation from carrying out a threat not to permit the holder of a share of stock, which has not been transferred on the books of the company as provided by the by-laws, from voting said stock in a meeting of stockholders. (Post, p. 139.)

---

*Headnotes 1. Corporations, 14 C. J., section 522; Injunctions, 32 C. J., section 376; 2. Corporations, 14 C. J., section 554; 3. Corporations, 14a C. J., section 2291; 4. Corporations, 14 C. J., section 1037; 5. Corporations, 14a C. J., section 2124; 6. Injunctions, 32 C. J., section 377.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —HON. JOHN R. AUST, Chancellor.

JORDAN STOKES, JR., JORDAN STOKES, III, JOHN A. PITTS and LACKEY & LOSER, for appellants.

LITTELL J. RUST and W. E. NORVELL, for appellees.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

These two causes were consolidated and heard together upon a stipulation of facts, and, in a way, involve a controversy as to the management and control of the Nashville Abattoir Hide and Melting Association, a Tennessee corporation, chartered in 1898, under the form prescribed for mining and manufacturing companies. Its capital stock was fixed at $50,000, consisting of 100 shares of $500 each. The corporation was organized and operated for profit, and its earnings have been large, so much so that the stock is worth three for one, or $1500 per share. The enhanced value of its stock is due to the fact that out of its large earnings it has only paid four per cent dividends per annum to stockholders.

The purposes of the corporation, as set forth in the original charter, is as follows:

"To conduct an abattoir; the buying and slaughtering of live stock; the buying of meats for curing, rehandling, packing and manufacturing into all forms known to commerce; the buying and selling of hides, tallow, etc.; and generally to secure a more scientific and economical conduct of their business by the butchers of the City of Nashville; to promote the sanitary condition of the city and the public health."

In 1923, the charter was amended so as to authorize it to mine coal, manufacture ice, buy and sell coal and ice, etc.

At no time has the number of shares of stock outstanding exceeded sixty-nine, while, at the time the bill was filed and at the present time, there are only sixty-five of such shares.

When this litigation began complainants, and those in sympathy with them, owned thirty-five shares, H. G. Hill & Company, who is neutral, one share, and defendants and their sympathizers twenty-nine shares.

Prior to the filing of the petition to rehear in the chancery court, complainants and their sympathizers had acquired by purchase eleven of the above twenty-nine shares. So that, at the present time, complainants and their sympathizers hold forty-six shares, defendants and their sympathizers eighteen shares and H. G. Hill & Company one share.

The original bill in the first above entitled cause was filed by James E. Petre, a stockholder, and George S. Jacobs, secretary and a director of the corporation, on their own behalf and for that of the corporation, and all other stockholders similarly situated, against the remaining six members of the board of directors of said corporation, for the purpose of enjoining them from issuing shares of stock in disregard of the rights of shareholders to subscribe *pro rata* to such stock, both the shares which had never been issued, and the share which had been issued and subsequently bought in by the corporation, and designated as treasury stock. As to the latter there appears to be but four shares.

It is proper to state at this point that the Chancellor found, and his finding is not questioned, that the defendants, board of directors, had sold, and were preparing to issue, ten shares of said stock to their friends so as to enable them to control the corporation at its annual meeting in January, 1928, when said first bill was filed.

(1) The Chancellor upon final hearing made said injunction perpetual, and, as we understood counsel in presenting the cause at the bar of this court, the decree is not seriously questioned with respect to stock which had

never been issued. In any event, the holding of the Chancellor is well supported by the following authorities: 7 R. C. L., 206; 14 C. J., 394; Cook on Corporations (8 Ed.), vol. 1, sec. 70; Thompson on Corporations, vol. 5, 474-477; *Luther* v. *Luther Co.,* 118 Wis., 112; *Endicott* v. *Baker* (Mass.), 80 N. E., 450; *Way* v. *American Grease Co.,* 60 N. J. Eq., 263; *Whittaker* v. *Kilby,* 106 N. Y. Supp., 511; *Reese* v. *Bank,* 31 Pa., 78; *Electric Co.* v. *Edicon Electric Co.,* 200 Pa. St., 516; *Jones* v. *Ry. Co.,* 67 N. H., 119; *Crosby* v. *Stratton* (Colo.), 68 Pac., 130; *Humboldt Driving Park Assoc.* v. *Stevens,* 34 Nebr., 528; *Eidman* v. *Bowman,* 58 Ill., 444; *Titus* v. *Bank* (Idaho), 179 Pac., 514.

*(2)* With respect to the four shares originally issued and subsequently purchased by the corporation, we hold that such purchase was illegal. *Darnell-Love Lbr. Co.* v. *Wiggs,* 144 Tenn., 113, 120, citing *Whaley* v. *King,* 141 Tenn., 1, 206 S. W., 31; *Civil Service Invest. Ass'n* v. *Thomas,* 138 Tenn., 77, 195 S. W., 775; *Herring* v. *Ruskin Co-op. Ass'n* (Ch. App.), 52 S. W., 327; *Cartwright* v. *Dickinson,* 88 Tenn., 476, 12 S. W., 1030, 7 L. R. A., 706, 17 Am. St. Rep., 190.

*(3)* Ordinarily the corporation may dispose of treasury stock. 14 C. J., 407.

*(4)* But, in the absence of statutory authority, a corporation cannot purchase its own stock, which it has issued, for the purpose of creating treasury stock, even though it may have power to purchase shares of its own stock for a legitimate corporate purpose, as such a purpose is not for a legitimate corporate purpose. 14 C. J., 408; *Knickerbocker Import. Co.* v. *State Bd. of Assessors,* 74 N. J. L., 583, 65 Atl., 913, 9 L. R. A. (N. S.), 885.

*(5)* Even where the corporation is authorized to purchase its outstanding stock, it would seem that the di-

rectors, in their trust relation to the stockholders, cannot dispose of such stock for the purpose of acquiring a majority of the stock, and thus gain control of the corporation. This is not a fair exercise in good faith of the power with which they are clothed. *Dunn* v. *Acme Co.* (Wis.), 169 N. W., 279; *Jones* v. *Morrison* (Minn.), 16 N. W., 854; *Elliott* v. *Baker*, 194 Mass., 518.

We are of the opinion that the complainants are entitled to the injunction prayed for, and the decree of the Chancellor will be affirmed.

(6) In the second above-entitled cause there is involved the validity of the following by-law of the corporation, to-wit:

"No stock in this company can, or shall be, transferred except upon the books of this company. Any stockholder desiring to dispose of his stock shall first notify the board of directors, in writing, of such desire, and the board of directors shall have the option (for the company) of buying the same at such figure as the stock is actually worth. In case of a disagreement between the stockholder and the board of directors as to the value of the stock the superintendent shall decide the question, and his decision shall be final, conclusive and binding upon both parties.

"Transfers of stock shall not be made on the books of the company except upon the order of the board of directors; and if they object to the sale or transfer thereof, either on account of the person to whom it is desired to make the transfer, or for any other reason, they shall have the right to decline to permit the transfer to be made, and to purchase the said stock for the company under the terms set out above.

"Any stock assigned except as above provided shall not be considered in good standing, and shall not be en-

titled to participate in any dividend subsequently declared by the company until the same has been formally restored to good standing by resolution of the board of directors. Any stock restored to good standing shall not participate in any profits earned while the said stock was not in good standing.

"In case of the death of any stockholder the board of directors shall have the same option as in the case of a stockholder desiring to dispose of his stock."

The Chancellor held this by law invalid because in restraint of trade, and its invalidity, as a by-law, for the reason stated, was conceded by counsel at the bar of this court, but counsel insists that said by-law was agreed to by all parties and was printed on each certificate of stock, and thereby constituted a good and valid contract that is binding upon all stockholders, and cite as authority *Nicholson v. Franklin Brewing Co.*, 82 Ohio State, 94, 19 Ann. Cas., 699, and *New England Trust Co. v. Abbott,* 162 Mass., 148, 27 L. R. A., 271.

In the former case, a thirty-day option was held to be a reasonable restraint. With respect to the latter case it is sufficient to say that in Massachusetts a corporation is authorized to purchase its outstanding stock.

(7) But it is said that the policy of this State, with respect to co-operative associations investing in their own stock, was changed by chapter 142 of the Acts of 1917.

That statute simply authorized corporations of the nature therein designated to invest not exceeding twenty-five per cent of their capital stock in stock of other associations organized thereunder.

With regard to the character of the Nashville Abattoir Hide and Melting Association, the Chancellor, in his opinion, said:

"But it must be borne in mind that the company was organized under and has all powers granted by the laws relating to private corporations organized for profit. It has a capital stock divided into shares, has accumulated a surplus which in the final analysis is the property of the shareholders, it earns and pays dividends on its shares of stock, and therefore, must, so far as the point now being considered is concerned, be deemed a corporation organized for profit and regulated and controlled by the laws pertinent to such entities."

Such a corporation cannot traffic in its stock upon the theory that it is a co-operative association. *Steele* v. *Farmers & Merchants Mutual Telephone Ass'n,* 95 Kan., 580, 148 Pac., 661.; *Herring* v. *Ruskin Co-op. Ass'n, supra; Civil Service Invest. Ass'n* v. *Thomas, supra.*

*(8)* In this particular cause complainant Smith had sold one share of stock in the corporation to the complainant White, but no transfer had been made on the books, as provided by said by-law. White had Smith's proxy. The bill alleged that the defendants, board of directors, had stated that they would not permit White to vote said share of stock at the annual meeting, and the bill was filed for the purpose of restraining them from carrying out their threat, and the Chancellor granted the relief asked for.

In view of the change in the ownership of stock, this matter is probably of little importance.

We agree with the Chancellor, however, in his conclusions, and his decree in the cause will likewise be affirmed.