Paul E. NELMS and Nancy Nelms Mac-
Intosh Wilson, Plaintiffs-Appellants,

v.

T.J. WEAVER, Jr. and Security Bank
& Trust Company,
Defendants-Appellees.

Supreme Court of Tennessee,
at Jackson.

Dec. 10, 1984.

H. Morris Denton, Bolivar, for plaintiffs-appellants.

Fred N. McLean, Lee M. Greer, III, Paris, for defendants-appellees.

OPINION

HARBISON, Justice.

Appellants brought this action seeking a declaratory judgment that stock certificates in Security Bank & Trust Company held by Mrs. Nancy Nelms MacIntosh Wilson were validly and properly issued to her. Appellants sought to require that the stock certificates be executed by T.J. Weaver, Jr., Chairman of the Board of the corporation. Counterclaims were brought against appellants by Mr. Weaver individually and by the corporation to cancel the certificates and to obtain a declaration that they had been improperly issued in violation of both a stockholders' resolution and a buy-sell agreement between Paul E. Nelms and Mr. Weaver. Mr. Nelms is the father of Mrs. Wilson. He and Mr. Weaver together held ninety-nine percent of the outstanding stock of the corporation at the time when the certificates in question were issued.

The Chancellor held against appellants, finding that the certificates in question were issued in violation both of the stockholders' resolution and of the buy-sell agreement. He further found that appellants had failed to prove that Mr. Weaver had prior knowledge of the transfer of stock to Mrs. Wilson, and he found that other minority stockholders in the corporation were not consulted before the transfer was made. Mr. Nelms was president of the corporation as well as a major stockholder. The Chancellor found that the other shareholders of the bank were not precluded from enforcing the shareholders' resolution by reason of estoppel, waiver, acquiescence or laches. He held that Mr. Nelms was the author of his own misfortune in not adhering to the written provisions of both the resolution and the buy-sell agreement.

The testimony at the trial was sharply conflicting, but there is no claim that the findings of the Chancellor lacked support in material evidence. Indeed, on appeal, there was no challenge to the findings of fact of the Chancellor, and these were concurred in by the Court of Appeals. Accordingly the case comes before this Court on concurrent findings of fact, supported by material evidence, and as a result all factual issues in the case are foreclosed here. T.C.A. § 27-1-113.

In other findings the Chancellor held that Nelms was not guilty of actual fraud in having the certificates issued to his daughter and that his action in doing so had not been secret or concealed. The Chancellor concluded that the dispute in the case essentially involved the rights of Nelms and Weaver, despite the fact that there were other minority stockholders. He accordingly ordered the certificates issued to Mrs. Wilson to be rescinded but then held that Mr. Nelms would be given an option to purchase the shares issued to her. To the extent he failed to do so, the remainder would be reissued to the other shareholders in accordance with the shareholders' resolution, upon return of the original purchase price to Mrs. Wilson.

The Court of Appeals reversed this portion of the holding of the Chancellor, finding that Nelms, as an officer and major stockholder of the corporation, had violated his fiduciary duties to the other stockholders in having the certificates issued to an outside third person in violation of the shareholders' resolution. It accordingly affirmed the rescission of the sale of stock to Mrs. Wilson, upon refund being made to her by the corporation, and directed that the shares in dispute then be offered to the other stockholders to the exclusion of Nelms.[1] It treated the actions of Nelms as tantamount to his rejecting or not asserting his pre-emptive rights since he did not exercise them in the manner required of all other stockholders.[2]

---

1. The Chancellor found that there was "an apparent misunderstanding or failure to communicate between Nelms and Weaver as to the events that transpired relative to the issuance of the stock to Wilson." Since he also found, however, that Weaver had no prior knowledge of the actions of Nelms, responsibility must rest upon Nelms for his failure to exercise properly his pre-emptive rights.

2. *See* 18 Am.Jur.2d, *Corporations* § 280 (1965).

■ We are of the opinion that the Court of Appeals reached the correct conclusion. The shares in question were part of a new stock issue authorized by the corporation. The stockholders' resolution required that each stockholder be offered pre-emptive rights in the new issue, as required by statute, T.C.A. § 48–1–713, and that in the event any shareholder elected not to exercise his pre-emptive rights, the shares should be offered pro rata to the remaining stockholders.

Although owning only one percent of the outstanding shares, the minority stockholders exercised their pre-emptive rights and took all of the shares which they were entitled to receive under the resolution. One of them testified at trial that he was prepared to purchase a substantial block of the stock if he could obtain it, and that he had made this known to other stockholders on previous occasions. It thus appears that the contractual rights of the other stockholders were not academic, and it is clear that Mr. Nelms, as president of the corporation, ignored these in having the shares to which he was entitled issued to an outside person, without consultation with or waiver by the other stockholders.

■ Both courts below also found that Mr. Nelms violated the buy-sell agreement between him and Mr. Weaver, and, on counterclaim by Weaver, the Chancellor voided that agreement as to all future transactions. Both courts impliedly rejected Weaver's insistence that the shares in question be offered to him under that agreement, finding that the terms and provisions of the shareholders' resolution were controlling, and we affirm that decision. This does not preclude his purchase of a pro rata portion of the shares, however, when they are returned to the corporation and offered for reissue. Appellants have not sought any such relief against Weaver as a part of their action, nor have the minority stockholders made any such claim.

Although we granted the application of appellants for further review of the case, we are of the opinion that under the findings of fact made by the courts below the issues presented are without merit. It is the insistence of appellants that the Court of Appeals improperly substituted its judgment as to appropriate equitable relief for that fashioned by the Chancellor. The Court of Appeals, however, relied upon well-settled rules of corporate law, to the effect that officers and directors of the corporation occupy a fiduciary relationship to their shareholders, as, indeed, do majority stockholders toward minority stockholders. *See generally Heylandt Sales Co. v. Welding Gas Products Co.,* 180 Tenn. 437, 175 S.W.2d 557 (1943); *Johns v. Caldwell,* 601 S.W.2d 37 (Tenn.App.1980).

■ The principal claims of appellants at the trial of this case were that Mr. Weaver was aware of the issuance of the shares to an outsider, Mrs. Wilson, and that he both expressly agreed to it and thereafter acquiesced in it. The Chancellor found these factual issues against appellants, and the Court of Appeals concurred in those findings. Had the facts been found otherwise, there might be a predicate for precluding Weaver from participating in the purchase of the disputed shares, but even then it is undisputed that the rights of the other minority stockholders in the case had been ignored and disregarded by the president of the corporation. Under these circumstances, in our opinion, the Court of Appeals correctly held that he was not entitled to seek relief in this case or to have the certificates validated.

All of the stock certificates involved required the signatures of the cashier and of one of the chief executive officers of the corporation. The shares issued to Mrs. Wilson bore the signature only of the cashier, and the place for the signature of an executive officer was left blank. Nelms testified that it was his understanding that Weaver would execute the certificates to Mrs. Wilson, but Mr. Weaver denied this and, again, that factual issue is foreclosed here, as are the other factual claims of waiver, estoppel, acquiescence or laches.

■ Mr. Nelms testified at trial that it was his understanding that he would sign

the certificates issued to Weaver, and that Weaver would sign the certificates issued to Nelms or his nominee. The record is to the contrary. Mr. Weaver is shown to have signed all certificates of stock which were issued by the corporation on the date in question, including those issued to him, and no stock certificate in the record bears the signature of Nelms. It may be that Nelms signed some debentures issued at the same time, but none of these are in the record. The credibility of Nelms and his witnesses on the issue of whether Weaver was supposed to execute the questioned certificates was sharply drawn in issue and has been resolved against appellants.

The stock issue in question occurred on June 29, 1979, following a resolution of the shareholders dated June 12. Formal demand that the shares issued to Mrs. Wilson be rescinded was not made until the latter part of 1980, nearly eighteen months later. In the meanwhile, however, the fact that the shares had been issued to her in violation of the shareholders' resolution had been discovered.' There was considerable discussion thereafter of the issuance of additional shares to the other stockholders to rectify and to adjust this situation. The corporation was in need of still further capital, and there is testimony which, if credited by the Chancellor, would have shown that the entire matter was under consideration for a long period of time.

The recapitalization did not occur, but the Chancellor found as a fact that there was no laches, acquiescence or waiver on the part of Mr. Weaver or of the other stockholders in the improper action of Nelms in having the certificates issued to a third person, even though that person was his daughter. She was *sui juris* and paid for the shares with her own funds. She is not shown to have been a mere alter ego of Nelms, and the situation with respect to her is no different from that which would have occurred had Nelms refused to take the shares himself and directed that they be issued to a completely unrelated third person.[3]

The corporation was closely held, and the shareholders' resolution clearly required that if any shareholder did not purchase any or all of his proportionate share of the stock offered for sale, then the right to purchase the unsold stock should be prorated among the remaining shareholders. This effectively restricted the new issue to the existing shareholders unless and until they waived or declined to exercise their rights, and this did not occur.

■ Appellants have insisted that the new shares were issued in violation of T.C.A. § 48–1–713(e), requiring notice to shareholders entitled to exercise pre-emptive rights, such notice to be given at least thirty days prior to the expiration of the period during which the right may be exercised. The record contains no evidence of any violation of this statute. Although the actual issuance of the shares occurred within thirty days from the date of the resolution, insofar as the record reveals all shareholders had full notice of the proposed action, and none claims to have been deprived of an opportunity to exercise pre-emptive rights because of any lack of notice.

■ Appellants also insist that the action to rescind the certificates issued to Mrs. Wilson should have been brought by the individual stockholders themselves and not by the corporation. The record clearly shows, however, that demand was made upon the officers and directors of the corporation by the minority stockholders to take corrective action, and the suit by the corporation was expressly authorized by the Board of Directors.

We find no merit in the claim of appellants. No question was raised in the pleadings or at trial with respect to the standing of the corporation to maintain the counterclaim for rescission as required by Rule 9, T.R.C.P. Even had such an issue been

---

**3.** Mrs. Wilson was present at the trial but did not testify. She has not claimed to be a bona fide purchaser without notice, nor has she asserted any other claims under the Investment Securities article of the Uniform Commercial Code, T.C.A. §§ 47–8–101 to 47–8–406.

raised, however, there is authority in this state for the corporation to act as a party in the bringing of a suit to rescind and to enjoin the illegal issuance of shares. *Petre v. Bruce*, 157 Tenn. 131, 7 S.W.2d 43 (1928). In that case the action was brought for and on behalf of the corporation as well as by a shareholder, an officer and a director. This Court affirmed the action of the Chancellor in granting relief. *See also Deaderick v. Wilson*, 67 Tenn. 108, 131 (1874); *Bourne v. Williams*, 633 S.W.2d 469, 471 (Tenn.App.1981); 18 Am.Jur.2d, *Corporations* § 253 (1965).

The judgment of the Court of Appeals, directing rescission of the shares issued to Mrs. Wilson upon repayment to her of the original purchase price, is affirmed. Its action in precluding Nelms from participating in the reissuance of the disputed shares is also affirmed. The cause is remanded to the chancery court for such further proceedings as may be necessary. All costs incident to the appeal are taxed to appellants.

COOPER, C.J., and FONES, BROCK and DROWOTA, JJ., concur.