# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
March 7, 2012 Session

## BETH PROFFITT v. SMOKY MOUNTAIN WOODCARVERS SUPPLY, INC., ET AL.

### Appeal from the Circuit Court for Blount County
### No. E23145      J. Kerry Blackwood, Senior Judge

---

### No. E2011-01801-COA-R3-CV-FILED-MAY 15, 2012

---

This appeal arises from the termination of Beth Proffitt ("Plaintiff") from employment at Smoky Mountain Woodcarvers Supply, Inc. ("the Corporation"). Plaintiff, a minority shareholder in the Corporation, sued the Corporation, as well as the other shareholders Mac Proffitt and Ray Proffitt (collectively, "the Defendants") in the Circuit Court for Blount County ("the Trial Court"). The Trial Court bifurcated the issues of liability and damages. Plaintiff alleged, among other things, that the Defendants breached their fiduciary duty to her. After a trial on the matter of liability, the Trial Court found the Defendants liable for breach of fiduciary duty. After the hearing on damages, the Trial Court awarded damages to Plaintiff, including lost salary and bonus. The Trial Court also awarded Plaintiff her attorney's fees. The Defendants appeal. We find that the Trial Court did not err in finding that the Defendants did breach their fiduciary duty to Plaintiff. We, however, reverse the award of attorney's fees to Plaintiff. Otherwise, we affirm the judgment of the Trial Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified, in part, and, Reversed, in part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

L. Lee Kull, Alcoa, Tennessee, for the appellants, Smoky Mountain Woodcarvers Supply, Inc., Ray Proffitt, and Mac Proffitt.

Melanie E. Davis, Maryville, Tennessee, for the appellee, Beth Proffitt.

# OPINION

## Background

Plaintiff sued the Defendants in the Trial Court in August 2009. In her verified complaint, which stated that it was both an individual and a derivative action, Plaintiff alleged, among other things, that the Defendants breached their fiduciary duty to her as a shareholder and officer of the Corporation. The Defendants filed an answer in which they denied Plaintiff's allegations. The Trial Court bifurcated the issues of liability and damages.

Trial on the issue of liability was held in August 2010. Plaintiff testified first. Plaintiff testified that she worked as a medical secretary at a hospital. Plaintiff stated that she previously had worked at the Corporation from 1998 to 2008. Plaintiff was married to Mac Proffitt from 1984 until their divorce in 2007, with a brief interim period of divorce in 1986-87. Plaintiff testified that the Corporation began after Mac Proffitt learned woodcarving and the two bought a business in Townsend with money out of their joint account. Plaintiff testified that the Corporation was incorporated in 1994. Plaintiff testified that Articles of Incorporation from 1994 reflected that Beth Proffitt, Ray Proffitt and Mac Proffitt formed the Board of Directors. Mac Proffitt was designated as CEO and President; Ray Proffitt as Secretary-Treasurer; and Beth Proffitt as Vice-President. Initially, Mac Proffitt had a 25% interest, his brother, Ray Proffitt, had a 25% interest, Ray Proffitt's son had a 25% interest, and Plaintiff had a 25% interest. Later, Ray Proffitt bought out his son's interest.

Plaintiff testified that she was not aware of Minutes from the Corporation's meetings until 2009. Plaintiff testified that, according to documents from the secretary of state's office, she was not listed as a director, although the original incorporation articles listed her as one. Plaintiff discovered this fact only after she obtained copies of the relevant records. Plaintiff testified that she never attended a directors meeting of the Corporation. Plaintiff stated that she attended her first shareholders meeting in November 2009.

Plaintiff testified that Mac Proffitt had wanted her to take a minimal salary or no salary in order to "grow the business" as a retirement strategy. Plaintiff stated that the highest salary she earned at the Corporation was "maybe fourteen hundred dollars a month." Plaintiff worked sixty, seventy or more hours per week when she earned that amount. Plaintiff testified that she worked as manager and fulfilled a number of duties, including directing employees and assisting customers. Plaintiff stated that Mac Proffitt did not work at the Corporation full-time until he retired in 2005. According to Plaintiff, Mac Proffitt primarily worked on the Corporation's website and on paperwork. Plaintiff testified that Ray Proffitt did "menial things" and worked two days a week.

In the mid-2000s, Plaintiff's and Mac Proffitt's marriage began to deteriorate. In March 2006, the two separated. In March 2007, Plaintiff and Mac Proffitt divorced. Plaintiff and Mac Proffitt continued to work alongside one another at the Corporation. For a few months in 2006, Plaintiff had a personal relationship with Allen Goodman ("Goodman"), a woodcarver and employee of the Corporation. Plaintiff testified that Goodman was "very skillful" at sharpening and making knives. Plaintiff also stated that "customers flocked to him for - - for help and - - information, how to do things." Plaintiff testified that Mac Proffitt was jealous both of her relationship with Goodman and also Goodman's popularity with the customers.

In May 2008, Plaintiff went on vacation in Florida. While in Florida, Plaintiff learned that Goodman had been fired. Plaintiff described her reaction to Goodman's termination:

Q. Did you think that that was a problem for the company?'

A. I did.

Q. Did you express that?

A. I did. I told [Mac Proffitt] I thought he had - - he had fired the best employee we had, the one who did the most work. And I said that I would not be able to pick up all of Allen's slack and do the duties that he had done.

Q. Did you believe there to be a legitimate reason for Allen Goodman's firing?

A. No, I did not.

Q. And was that ever discussed with you as the director of the company or a shareholder?

A. No, ma'am.

Upon her return from Florida, Plaintiff had a meeting with Mac Proffitt. Plaintiff testified that her employment was terminated at that meeting. In the course of the meeting, Plaintiff's keeping beer in the Corporation's refrigerator came up as an issue. Plaintiff admitted that she sometimes drank beer after hours at work but stated that she had

been told only that beer was not "preferred" in the refrigerator as opposed to being prohibited outright.  Plaintiff testified:

Q.      What did Mac tell you when he terminated you?

A.      He told me that he - - they thought I was a threat to the corporation and said they were terminating me.  And I asked him if he had - - what the grounds were, and he said he didn't need any grounds because Tennessee is an at-will state for firing.  So he said he had no - - all he had to do was just decide that he didn't want me there.

Q.      And, obviously, you hadn't been invited in for a meeting on your firing, had you?

A.      Obviously.

Q.      And were you asked anything about needing a job?

A.      Yes.  There was a little - - an instance where Mac looked at Ray and asked him if he needed a job, and Ray said, no, not really.  And Ray asked Mac if he needed this job, and Mac said, no.  And Mac looked at me and said, do you need this job?  And I said, you know I do.  It's my only income.  And they just laughed.

Soon after Plaintiff was terminated, Mac Proffitt's new wife, Connie, went to work for the Corporation.

Plaintiff testified to various endeavors the Corporation embarked upon without her input.  Plaintiff stated that the Corporation failed to exercise an option to purchase real property without her input.  Plaintiff further testified that bonuses were awarded to Mac Proffitt, Ray Proffitt, and Connie Proffitt in the amount of $3,500 each.  Plaintiff, again, stated she had no input into this decision.

After Plaintiff's employment was terminated, Plaintiff attempted to procure certain documents from the Corporation.  After her first attorney apparently failed to follow the proper procedure in making the document request, Plaintiff hired new counsel and received the corporate documents.  The corporate financial documents were misleading. Among other things, inventory amounts kept being added to the inventory total so the inventory figures were seriously inflated. Plaintiff testified that the tax returns did not match the Corporation's financial documents.

Don Short ("Short"), a former worker at the Corporation, testified about an incident involving Mac Proffitt and a customer. A customer wanted a tool sharpened. Short told the customer that he would give it to a man, meaning Goodman, who could fix it. Mac Proffitt overheard this and reacted angrily, stating that Goodman was not the only one who knew how to sharpen tools. According to Short, Mac Proffitt then attempted to fix the tool but did not succeed. Additionally, Short stated that he once asked Mac Proffitt why his wife Connie was not working in the Corporation. Short testified that Mac Proffitt nodded his head toward Plaintiff and said Connie Proffitt could not work there under the circumstances.

Several other witnesses testified to incidents at the Corporation involving Plaintiff, as well as the Corporation's policies. Linda Lee Frazier ("Frazier"), another former employee of the Corporation, testified that Plaintiff was quite popular with the customers. Frazier testified that Mac Proffitt fired Plaintiff in order to make room for Connie Proffitt to work at the Corporation. Tracy Goodman, Goodman's wife, testified that Mac Proffitt, enraged by a seemingly suggestive note from Goodman to Plaintiff, said he had "had it." Tracy Goodman stated that Mac Proffitt told her that he was going to fire Plaintiff. Finally, James Morton Yellow Eagle ("Yellow Eagle"), another former employee of the Corporation, testified that he never was told beer was not to be in the Corporation's refrigerator. Yellow Eagle stated that Ray Proffitt told him he could have beer if he wanted it.

Mac Proffitt testified. Mac Proffitt stated that drinking on the premises of the Corporation was forbidden because of the potential for legal liability. Mac Proffitt also objected to Plaintiff "huddling" in the corner with Goodman or being seen with him after hours. Mac Proffitt stated that Plaintiff threatened to "take [him] down." Regarding his role, Mac Proffitt testified that as CEO, "I am the company." Mac Proffitt stated that he and his brother, Ray Proffitt, discussed firing Plaintiff, and Mac Proffitt subsequently did fire Plaintiff. Mac Proffitt testified that Plaintiff was not involved in, nor was she given any notice of, any directors meetings from the time she was terminated through November 2009. Mac Proffitt explained that this was because Plaintiff "represented a threat to the company, and we didn't want her involved." Mac Proffitt explained:

Q: You made a unilateral decision that you didn't want her involved, so you didn't invite her?

A: I think I answered that, yes, ma'am.

Q: But you just made that decision that she wasn't invited?

A: Ray and I together made that decision.

-5-

Q: And do you consider it to be a director's meeting just whenever you and your brother get together and talk?

A: Sure.

Q: You don't think you have to have notice of a meeting?

A: No.

Q: You don't think Beth, as a director, deserved notice of a meeting?

A: Not when she represents a threat to the company.

* * *

A: She told me she was going to take me down. That, to me, is a threat to the corporation.

Mac Proffitt staunchly denied being motivated by jealousy of either Goodman or Plaintiff.

After the trial on liability concluded, the Trial Court entered an order in which it found the Defendants liable for breach of fiduciary duty. In its August 2010 findings and conclusions, the Trial Court found and held, in part:

Although these parties were able to continue to work for the corporation after the divorce, it is apparent that the stains of the divorce were intrinsic to the corporation's history subsequent thereto. Determining the intent of the defendants in their actions toward plaintiff subsequent to the divorce depends on a large extent upon the parties' respective credibility. All parties are hostile to each other and that tempers their credibility. However, Mac Profitt's hostility and insouciance are palpable. During their last meeting which resulted in plaintiff's termination, Mac Profitt testified in substance that "he could see it in her eyes; she was a threat to the corporation." He also claimed that plaintiff was violating a direct order not to drink beer on the premises and kept it in the refrigerator. Both defendants testified concerning two events in which they were alerted by third parties of late night activity and beer drinking by the plaintiff. However, no other corroborating evidence was offered. After the divorce the defendants removed the plaintiff without her knowledge from the Board of Directors. The brothers failed to list plaintiff as a shareholder on income tax returns. The defendants did not provide financial documentation

when requested, prompting a civil lawsuit in which corporate assets were spent. They failed to inform her that Mac Profitt's wife was hired by the company. The defendants failed to notify her that a $3,500 bonus was paid by the corporation to the defendants and defendant's wife. The defendants failed to inform her about their decision not to exercise the lease purchase option. Mac Profitt testified, in substance, that "as CEO he runs the corporation." His attitude throughout his testimony echoed this sentiment.

It is evident to the Court that defendants' actions since the divorce have been attempts to remove plaintiff from any further participation in the corporation. The Court finds that the defendants' actions toward plaintiff have not been business judgments but have been motived by avarice, malice and self interest. The defendants have breached their fiduciary duties to plaintiff by a systemic scheme to deny her shareholder's rights and provide her with any meaningful information regarding the corporation.

The hearing on damages was in March 2011. The crux of the hearing was the testimony of Jon Dockery ("Dockery"), the CPA tasked by the Trial Court with evaluating the Corporation, who testified about the Corporation's value. Dockery submitted a report which was entered as an exhibit detailing his analysis of the Corporation. Dockery testified that the Corporation, as a going concern, was valued at $119,217, thus making a 25% share equal $29,804. Dockery, after taking into account a minority interest discount, valued Plaintiff's shares in the Corporation to equal $15,300. Later in the hearing, Mac Proffitt estimated that the Corporation was worth only $17,000 to $25,000.

After the hearing regarding damages, the Trial Court entered an order detailing the damages it awarded Plaintiff. In its April 2011 order, the Trial Court stated, in part:

On the 16th day of August 2010, this Court found that defendants' Mac Profitt and Ray Profitt breached their fiduciary duties and corporate responsibilities to the plaintiff pursuant to Tenn. Code Ann. § 48-17-401. The Court further found that the defendants' conduct was motivated by avarice, malice and self interest.

This matter is now before the Court for an appropriate remedy for the breach of their fiduciary duties.

Subsequent to the original hearing in this cause, this Court appointed an expert, Jon Dockery, to assist the Court by providing an evaluation of this corporation. It was evident to the Court that these parties had extremely

divergent opinion about the value, profitability and income producing ability of this corporation. These opinions were partly based upon certain accounting principles employed by the defendants as well as their refusal to share records with the plaintiff. Additionally, plaintiff's opinions were not a reasonable assessment of corporate worth based upon an inflated view of a corporate asset, i.e., an option to purchase real estate. After reviewing the testimony of witnesses and review of Mr. Dockery's report, the Court finds the expert's opinion to be a reasonable assessment of the corporate value. Therefore, the Court finds that the corporate entity's value to be $119,217.

Dissolving this corporation would be a drastic and unreasonable remedy. At the time of trial, the Court believed that the worth and income producing ability of this corporation was in excess of the report of the expert Mr. Dockery. At its best, the yearly profitability is approximately $20,000. The inventory was grossly overvalued based upon a sound accounting practice. The inventory consists of small items used for carving and it would be difficulty [sic] to sell the entity as a going concern. Both defendants should be near retirement and the business depends upon the ability of Mac Proffitt to continue to operate the business.

In conclusion, the proper remedy would be for the majority shareholders to purchase the 25% shares owned by the plaintiff and award plaintiff further damages for the breach. The Court finds that the reasonable value of plaintiff's 25% share should be reduced by a minority interest discount which fixes plaintiff's share at $22,353. In addition, the Court has previously determined that plaintiff's firing as an employee was motivated by a desire to force her out of the corporation. Consequently, she lost wages from the corporation for approximately five months at a salary of $2,000. Therefore, she is entitled to an additional $10,000 for lost wages.

A major element of damages which plaintiff seeks concerns her claim that she was deliberately unpaid a salary so that the parties could reinvest a portion of her salary into the corporation. This agreement would allow the corporation to increase its value and serve as a source of retirement income for the sake of the corporation. As the Court has noted, this corporation's value has been grossly overstated. Secondly, to have paid the plaintiff her alleged full salary based upon the estimates she presented in Court would have further diminished the value of this corporation. Lastly, these "retirement" projections are entirely speculative.

Consequently, the Court denies these damages.

The plaintiff more likely than not would have received a bonus while working. The Court sets that figure at $400.

Finally, the Court finds that this action brought by the plaintiff has benefitted the corporation by providing a proper valuation of the corporation; assessing the true value of the option; requiring the corporation to be cognizant of their corporation responsibilities to shareholders and adopt proper accounting measures. Consequently, plaintiff is entitled to attorney fees. Counsel for plaintiff will file an affidavit in support of this claim and opposing counsel will have fifteen days to file a response or objection.

Therefore, the Court awards plaintiff a judgment for $32,853 for which execution shall issue. The cost of this cause should be assessed against the defendants and the expert fee shall be assessed against the defendants. Counsel will prepare an order to reflect these findings.

Subsequently, an order incorporating these findings, including an award of damages in the amount of $32,853[1], was entered. In a May 2011 order, the Trial Court also awarded Plaintiff attorney's fees at $19,201 and discretionary costs at $9,261.45. The Defendants filed a motion to alter or amend, which was denied. The Defendants appeal.

## Discussion

We restate the issues on appeal as follows: 1) whether the Trial Court erred in holding that this lawsuit was a derivative action and then awarding Plaintiff her attorney's fees in the derivative action; 2) whether the Trial Court erred in awarding Plaintiff lost wages and a bonus; 3) whether the Trial Court erred in its valuation of Plaintiff's stock; and, 4) whether the Trial Court erred in holding Mac Proffitt and Ray Proffitt individually liable. Plaintiff also requests an award of her attorney's fees on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of

---

[1]The three amounts awarded as damages, $22,353, $10,000, and $400, total $32,753 rather than $32,853.

correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Tennessee law provides for derivative actions:

(a) A person may not commence a proceeding in the right of a domestic or foreign corporation unless the person was a shareholder of the corporation when the transaction complained of occurred or unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time.

(b) A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why the person did not make the demand. Whether or not a demand for action was made, if the corporation commences an investigation of the charges made in the demand or complaint, the court may stay any proceeding until the investigation is completed.

(c) A proceeding commenced under this section may not be discontinued or settled without the court's approval. If the court determines that a proposed discontinuance or settlement will substantially affect the interest of the corporation's shareholders or a class of shareholders, the court shall direct that notice be given the shareholders affected. If notice is so directed to be given, the court may determine which one (1) or more parties to the suit shall bear the expense of giving such notice, in such proportions as the court finds to be reasonable in the circumstances, and the amount of such expense shall be awarded as special costs of the suit and recoverable in the same manner as other taxable costs.

(d) On termination of the proceeding, the court may order:

(1) The corporation to pay the plaintiff's reasonable expenses, including counsel fees, incurred in the proceeding, if the court finds that the proceeding has resulted in a substantial benefit to the corporation;

(2) The plaintiff to pay any defendant's reasonable expenses, including counsel fees, incurred in defending the proceeding, if the court finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose; or

(3) A party to pay an opposing party's reasonable expenses, including counsel fees, incurred because of the filing of a pleading, motion or other paper, if the court finds that the pleading, motion or other paper was not well grounded in fact, after reasonable inquiry, or warranted by existing law or a good faith argument for the extension, modification or reversal of existing law and was interposed for an improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

(e) For purposes of this section, "shareholder" includes a beneficial owner whose shares are held in a voting trust or held by a nominee on the beneficial owner's behalf.

Tenn. Code Ann. § 48-17-401 (Supp. 2011).

Initially, we address whether the Trial Court erred in holding that this lawsuit was a derivative action as well as an individual action. The Defendants argue that the complaint in this matter was such that it asked only for Plaintiff's individual relief and not any relief on behalf of the Corporation. Plaintiff's complaint, however, appears to comport with Tennessee law on derivative actions. "Shareholders may bring derivative and individual actions simultaneously." *Hall v. Tennessee Dressed Beef Co.*, 957 S.W.2d 536, 540 (Tenn. 1997). Absent a conflict of interest, there is no bar to a shareholder maintaining a derivative action while also pursuing an individual claim against the corporation and other defendants. *Id.* at 540. We hold, as did the Trial Court, that the complaint properly sought relief both as to Plaintiff individually and on behalf of the Corporation.

Plaintiff also was awarded attorney's fees. A trial court may order a corporation in a derivative action to pay reasonable attorney fees "if the court finds that the proceeding has resulted in a substantial benefit to the corporation." Tenn. Code Ann. § 48-17-401 (d)(1) (Supp. 2011). However, it is not at all clear that the accounting brought about by this lawsuit constitutes a substantial benefit for the Corporation. We are not persuaded from the evidence that Plaintiff's lawsuit resulted in a substantial benefit to the Corporation as the evidence preponderates in favor of a finding that this action did not result in any substantial benefit to the Corporation. Any benefits to the Corporation, a small closely held corporation with only three stockholders when the suit was filed, resulting from Plaintiff's derivative action are, in actual application, minor at most. We, therefore, reverse the Trial Court's award of attorney's fees to Plaintiff.

We next address whether the Trial Court erred in awarding Plaintiff lost wages and a bonus. We have discussed fiduciary duty in the context of close corporations such as the Corporation:

> Tennessee law protects minority shareholders from majority shareholders due to the competing nature of their interests. *Cambio Health Solutions, LLC v. Reardon*, 213 S.W.3d 785, 788 (Tenn. 2006). As part of this protection, a majority shareholder owes a fiduciary duty to minority shareholders. *Id*. (citing *Nelms v. Weaver*, 681 S.W.2d 547, 549 (Tenn. 1984)). Accordingly, "[a] majority shareholder is obligated to deal fairly with minority shareholders and not to act out of *avarice, malice, or self-interest*." *Reardon*, 213 S.W.3d at 788 (emphasis added) (citing *Nelson v. Martin*, 958 S.W.2d 643, 649 (Tenn. 1997), overruled on other grounds by *Trau-Med of Am., Inc.*, 71 S.W.3d 691, 701 (Tenn. 2002)). Stated another way, "the shareholders of a close corporation share a fiduciary relationship which imposes upon all shareholders the duty to act in good faith and fairness with regard to their respective interests as shareholders." *Hall v. Tennessee Dressed Beef, Co.*, 957 S.W.2d 536, 541 (Tenn. 1997).

*Rennel v. Through the Green*, *Inc.*, No. M2008-01906-COA-R3-CV, 2009 WL 2365564, at *2 (Tenn. Ct. App. July 31, 2009), *no appl. perm. appeal filed*.

The Defendants argue that the Trial Court erred in awarding Plaintiff, as an at-will employee in a state that adheres to the employee-at-will doctrine, $10,000 in lost salary and $400 in bonus. However, this is not a typical employment situation. Here, Plaintiff was a minority shareholder and director in the Corporation. The Defendants owed Plaintiff a fiduciary duty. The record is replete with evidence of the Defendants' efforts to exclude Plaintiff. The evidence in the record on appeal does not preponderate against the Trial Court's finding that the Defendants acted with malice and avarice with respect to Plaintiff. We emphasize that shareholders in the Corporation made money from the Corporation by means of salary and bonus. As the Trial Court found, the Defendants breached their fiduciary duty "by a systematic scheme to deny her shareholder's rights and provide her with any meaningful information regarding the corporation." The evidence in the record on appeal does not preponderate against the Trial Court's findings relative to Plaintiff's damages resulting from the Defendants' breach of their fiduciary duty owed to Plaintiff.

We next address whether the Trial Court erred in its valuation of Plaintiff's stock. Neither side takes issue with the Trial Court's decision that the proper remedy would include the majority shareholders purchasing Plaintiff's 25% of the shares of the Corporation. Dockery, the expert tasked by the Trial Court with evaluating the Corporation, arrived at the figure of $119,217 for the Corporation, and $15,300 for Plaintiff's stock. The Trial Court ultimately settled on $22,353 as the value of Plaintiff's 25% share of the Corporation's stock.

The Defendants take issue with the fact that the Trial Court did not adopt the expert's evaluation figure and reached a figure not specifically identified in evidence. It is not necessary, however, that the Trial Court adopt precisely the expert's recommended valuation. The figure the Trial Court settled on, while not specifically that of the expert, falls within the reasonable range of evidence presented at trial. We find that the evidence does not preponderate against the Trial Court's valuation of Plaintiff's stock.

We now address whether the Trial Court erred in holding Mac Proffitt and Ray Proffitt individually liable. The Defendants cite to no law on this point, and we are hard-pressed to agree that individuals may not be held liable in matters such as the instant case. The Trial Court specifically found that the Defendants breached their fiduciary duty as majority stockholders to Plaintiff, a minority stockholder. The Trial Court further found that the Defendants' actions were "motived by avarice, malice and self interest." The evidence does not preponderate against these findings by the Trial Court. The damages awarded by the Trial Court to Plaintiff against the Defendants were those damages found by the Trial Court to be supported by a preponderance of the evidence as those damages suffered by Plaintiff because of the Defendants' breach of their fiduciary duty. We affirm the Trial Court as to this issue.

In the exercise of our discretion, we decline to award either party attorney's fees on appeal.

## **Conclusion**

The judgment of the Trial Court is affirmed as modified, in part, and, reversed, in part. We reverse the Trial Court's award of attorney's fees to Plaintiff, and we affirm the rest of the Trial Court's judgment with the amount of $32,853 being modified to $32,753. This cause is remanded to the Trial Court for collection of costs below. The costs on appeal are assessed one-half against the Appellants, Smoky Mountain Woodcarvers Supply, Inc., Ray Proffitt, and Mac Proffitt, and their sureties, if any; and, one-half against Appellee, Beth Proffitt.

_____
D. MICHAEL SWINEY, JUDGE